Jolene Hezekiah, Appellant, v Jesse B. Williams, Respondent, et al., Defendants.

Second Department, June 22, 1981

APPEARANCES OF COUNSEL

*Charles Krupin (David P. Slater* of counsel), for appellant.

*Suozzi, English, Cianciulli & Peirez, P. C. (J. Irwin Shapiro, Stephen C. Glasser* and *Charles J. McEvily* of counsel), for respondent.

### OPINION OF THE COURT

Titone, J.

In this case of apparent first impression, we are asked to determine whether, as a matter of law, plaintiff in this automobile negligence action has established a "significant limitation of use of a body function or system" pursuant to

the revised "verbal" definition of "serious injury" (Insurance Law, § 671, subd 4), as the prerequisite to her right to recover for noneconomic loss, i.e., pain and suffering (Insurance Law, § 673, subd 1).

Plaintiff appeals, by permission of the Appellate Term for the Second and Eleventh Judicial Districts, from an order of that court *(Hezekiah v Williams,* 106 Misc 2d 407 [opn per PINO, P. J.]) which (1) unanimously reversed, on the law, a judgment of the Civil Court of the City of New York, Kings County (100 Misc 2d 807 [GOLDSTEIN, J.]) entered after a jury trial, in favor of plaintiff and against Jesse Williams (hereafter defendant) and (2) dismissed the complaint as against him.

On January 23, 1978 plaintiff was injured when the taxicab in which she was a passenger was struck from the rear by defendant's car. Prior to trial defendant conceded liability for the accident, and thus the only issue presented was the nature and extent of plaintiff's injuries.*

At trial, plaintiff testified as follows: The impact of the collision caused her to hit her back on the seat and floor of the taxicab. Following the accident she received emergency treatment at a hospital and was released after about six hours. A hospital record, indicating that plaintiff received a back injury, was received in evidence.

Plaintiff remained home from work for three weeks following the accident. During this period she had trouble sleeping and required assistance from her mother in eating, dressing, bathing and going to the bathroom. She visited a physician for treatment on more than 10 occasions and continued to experience pain and discomfort during the five-week period following the accident. Plaintiff presented no medical testimony or any proof of disability following her return to work.

At the close of plaintiff's case, defendant moved to dismiss the complaint on the ground that plaintiff failed to establish that her injury met any of the threshold require-

---

* It was stipulated between the parties that a broken wrist suffered by plaintiff one week after the accident, which was included in her bill of particulars, would not be claimed as an injury resulting from the accident.

ments of "serious injury" under subdivision 4 of section 671 of the Insurance Law, and he renewed the motion after resting without presenting any evidence. The court reserved decision on both motions and submitted the case to the jury. The court charged, in part, that in order to recover plaintiff had to establish, by a preponderance of the evidence, that she had suffered a "significant limitation of use of a body function òr system" (conceded to be the only definition of "serious injury" applicable under the facts of the case). The jury returned a verdict in favor of plaintiff in the sum of $500. Defendant moved to set aside the verdict on the same ground as his prior motions. The court denied his motions, finding that plaintiff had raised a question of fact which was properly one for the jury to resolve. The court also denied plaintiff's motion to set aside the verdict as inadequate.

On appeal to the Appellate Term, Justice PINO, in a well-reasoned opinion, concluded that to qualify plaintiff's non-medically determined, nonpermanent injury, of five weeks duration, as a "significant limitation of use of a body function or system", by a literal interpretation of the terms, would subvert the intent of the statute. Accordingly, the judgment was reversed (106 Misc 2d 407, *supra*) and the complaint dismissed as against defendant.

We are in agreement with this analysis. In construing the phrase "significant limitation of use of a body function or system", it is necessary to examine the history and purpose of the "no-fault" legislation in this State.

The Comprehensive Automobile Insurance Reparations Act, article 18 of the Insurance Law (added L 1973, ch 13, § 1), New York's so-called "no-fault" law, was adopted by the Legislature to overcome certain deficiencies recognized to exist under the common-law tort system of compensating automobile accident victims (see *Montgomery v Daniels*, 38 NY2d 41, 49-50). The tort system was perceived to be unnecessarily expensive and inefficient, and in addition was believed to place an inordinate burden on the State's court system (see *Montgomery v Daniels, supra*). To this end, the no-fault system, *inter alia*, attempted to limit access to the courts by providing for first-party benefits to compen-

sate an injured party for basic economic loss, regardless of fault, while at the same time restricting the right to recover for noneconomic loss, i.e., pain and suffering (see *Vidra v Shoman*, 59 AD2d 714).

Thus it was provided: "Notwithstanding any other law, in any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a *serious injury*, or for basic economic loss." (Insurance Law, § 673, subd 1; emphasis added.)

As originally enacted, the no-fault law contained a two-part (verbal and monetary) definition of the term "serious injury", meaning a personal injury:

"(a) which results in death; dismemberment; significant disfigurement; a compound or comminuted fracture; or permanent loss of use of a body organ, member, function, or system; or

"(b) if the reasonable and customary charges for medical, hospital, surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services necessarily performed as a result of the injury would exceed five hundred dollars." (Insurance Law, § 671, former subd 4.)

Thereafter, it became apparent that this standard was ill-suited to fulfilling the goal of the no-fault law, limiting the right to recover for noneconomic loss, since in practice it was all too easy to overcome the $500 monetary threshold. Accordingly, this section was repealed in 1977 and replaced with a purely verbal definition of "serious injury", as follows: " 'Serious injury' means a personal injury which results in death; dismemberment; significant disfigurement; a fracture; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days

during the one hundred eighty days immediately following the occurrence of the injury or impairment." (Insurance Law, § 671, subd 4, as added by L 1977, ch 892, § 8.)

The purpose of this amendment can be readily ascertained by reference to an accompanying memorandum of the State Executive Department, in which it was stated that "[t]his new objective verbal definition is expected to significantly reduce the number of automobile personal injury accident cases litigated in the courts, and thereby help contain the no-fault premium." (1977 McKinney's Session Laws of NY, p 2448.) The same memorandum went on to note that the $500 monetary threshold "has created a target for accident victims, their attorneys and health providers, which is too easily reached." (1977 McKinney's Session Laws of NY, p 2450.) In this same vein are the comments of the Governor upon signing the amendment into law. (NY Legis Ann, 1977, p 310.)

Upon analysis of the amended definition of "serious injury", it can be seen that the Legislature left former subdivision (a) basically intact (merely eliminating the distinction as to fracture types) and in place of the former subdivision (b) (the monetary standard) substituted two terms, including the one before us.

As Justice PINO observed, the new "serious injury" definition, as a whole, seems to describe two broad categories of injuries. The first group of terms relates to injuries of an objective nature (including the term before us, in that it addresses injuries significantly limiting use of a body function or system). The second category, on the other hand, is more subjective in nature, referring to any medically determined nonpermanent injury which endures for 90 days or more, and substantially limits performance of daily activities.

On the facts before us, plaintiff has described an injury which would seem more properly to fall within the latter category, except that she was disabled for only a limited period of time and her injury was not medically determined. Her injury was one which prevented her from performing her usual daily activities (e.g., eating, bathing and dressing), during the three weeks that she was home. No medical

evidence was adduced relating this disability to her back injury. Thus it is clear that plaintiff's injury was excluded from the latter category of "serious injury".

However, plaintiff would have us hold that, although her injury fell short of the requirements of this subjective category (because of its limited duration and lack of medical determination), a question of fact was presented as to whether it constituted a "significant limitation of use of a body function or system".

While we would agree that in an appropriate case a plaintiff might be entitled to recover for certain nonmedically determined injuries of limited duration, not all such injuries present a jury question (cf. *Slack v Crossetta*, 75 AD2d 809; *Joyce v Winkler*, 71 AD2d 28; *Cohen v Lizza*, 63 AD2d 557). The issue is one for the court, in the first instance, to determine whether the plaintiff has established a prima facie case. Thus, in *Ayala v Reyes* (66 AD2d 790), this court reversed an order denying a motion to dismiss an action, after a hearing held before a Referee, noting that the plaintiff, who did not offer any medical evidence on the nature of his fracture or its effect, failed to meet his burden of proof (see, also, *Simone v Streeben*, 56 AD2d 237; *Cole v Berkowitz*, 83 Misc 2d 359; *Sullivan v Darling*, 81 Misc 2d 817).

To follow plaintiff's interpretation, and allow every case to go to the jury, would render the amendment meaningless, and further frustrate the legislative purpose of limiting the number of tort suits for noneconomic loss (see *Montgomery v Daniels*, 38 NY2d 41, *supra; Vidra v Shoman*, 59 AD2d 714, *supra*).

In the case at bar, plaintiff failed to establish a prima facie case. Plaintiff's proof established only a nonpermanent back injury which inhibited her daily activities for a three-week period. She failed to introduce any medical testimony as to the extent of her back injury or its effects on her ability to function. On these facts, we believe there was no line of reasoning by which the jury could have concluded that plaintiff suffered a "significant limitation" (see *Cohen v Hallmark Cards*, 45 NY2d 493).

As Justice PINO noted, conceivably there could be a

severe injury of less than 90 days duration which would satisfy the requirements of the statute, but such is not the situation here. On the record before us, plaintiff failed, as a matter of law, to establish the threshold of "serious injury" within subdivision 4 of section 671 of the Insurance Law. Accordingly, we affirm the order reversing the judgment and dismissing the complaint as against defendant.

DAMIANI, J. P., MANGANO and RABIN, JJ., concur.

Upon an appeal by permission, order of the Appellate Term of the Supreme Court for the Second and Eleventh Judicial Districts, dated June 26, 1980, affirmed, with $50 costs and disbursements.